**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

QUANNAH HARRIS,
d/b/a LAST MINUTE CUTS,                )
                                      )
     **Plaintiff,**                   )
                                      )
**v.**                                )        No. 22-02757-MSN-tmp
                                      )
SALMON SIMS THOMAS, PLLC,             )
EILEEN KELLER, AARON LOHMAN,          )
AND JOHN DOES 1-10,                   )
                                      )
     **Defendants.**                  )

_____

**REPORT AND RECOMMENDATION**

_____

Before the court are four motions filed by defendants Salmon Sims Thomas, PLLC ("SST"), Eileen Keller, and Aaron Lohman (collectively "defendants"): a Motion to Dismiss for Lack of Jurisdiction (ECF No. 17), a Motion to Dismiss or Motion to Quash Service of Process (ECF No. 18), a Motion to Dismiss for Failure to State a Claim (ECF No. 19), and a Motion to Transfer Venue or Rule 12(b)(3) Motion to Dismiss.[1] (ECF No. 20.) Also before the court are two motions filed by *pro se* plaintiff Quannah Harris: a Motion to Strike Defendant Salmon Sims Thomas, PLLC's Rule 12(b)(2) Motion to Dismiss (ECF No. 21) and a Motion to Strike Defendants'

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

Motion to Dismiss or Motion to Quash Service. (ECF No. 22.)

For the following reasons, it is recommended the defendants' Motion to Dismiss for Lack of Jurisdiction be denied and their Motion to Transfer be granted.

## I.    PROPOSED FINDINGS OF FACT

Plaintiff Quannah Harris is a resident of Memphis, Tennessee, who operates Last Minute Cuts, a school of barbering and cosmetology. (ECF No. 12.) On November 2, 2022, Harris filed a complaint against SST. (ECF No. 1.) SST is an accounting firm headquartered in Dallas, Texas. (Id. at PageID 2.) In her complaint, Harris alleged that she retained SST to perform an audit of her school. (Id. at PageID 3.) The results of the audit were to be part of an application for accreditation with the National Accreditation Commission of Career Arts and Sciences ("NACCAS"). (Id.) If accredited, Harris's school would receive additional funding from the Department of Education. (Id.) According to Harris's complaint, she directed SST to perform an audit according to generally accepted accounting principles, otherwise known as a "G.A.A.P. audit." (Id.) However, SST instead performed an audit according to generally accepted government auditing standards, or a "G.A.G.A.S. audit." (Id.) Harris claims that as a result of the particular standards guiding the audit process, the audit she submitted caused her application to the NACCAS to be denied. (Id.) In this initial complaint, Harris brought five causes of action

against SST: accounting malpractice, negligence, breach of fiduciary duty, negligent misrepresentation, and intentional misrepresentation. (ECF No. 1 at PageID 5-12.)

SST responded to Harris's complaint with several motions. First, it filed a motion to dismiss for lack of personal jurisdiction. (ECF No. 9.) There, it argued that the court lacked both general and specific jurisdiction to hear this case because SST performed all audits remotely from the state of Texas and had no contacts with the state of Tennessee. (Id. at PageID 24.) SST also filed a motion to dismiss for failure to state a claim. (ECF No. 10.) It asserted that Harris did not have standing to bring claims on behalf of Harris & Harris, the entity that was party to their contract. (Id.) It also stated that Harris's claims were time-barred and that her causes of action failed as a matter of law. (Id.) Finally, SST filed a motion to dismiss or transfer, arguing both that venue was improper in the Western District of Tennessee, and even if it were not, the court should transfer venue pursuant to a forum selection clause agreed to by the parties. (ECF No. 11.) In support of this motion, SST attached two engagement letters that it claimed contained forum selection clauses. (Id. at PageID 170.) The text of the clause in the first letter reads as follows:

> You agree that any dispute (other than our efforts to collect an outstanding invoice) that may arise regarding the meaning, performance, or enforcement of this

engagement or any prior engagement that we have
performed for you will, prior to resorting to
litigation, be submitted to mediation and that the
parties will engage in the mediation process in good
faith once a written request to mediate has been given
by any party to the engagement. Any mediation initiated,
as a result of this engagement shall be administered
within the county of Dallas in the state of Texas, by
the Offices of Christopher Nolland, 1717 Main Street,
Suite 5550, Dallas, TX 75201, or by another mediation
organization chosen by our firm, according to its
mediation rules, and any ensuing litigation shall be
conducted within said county, according to Texas law.
The results of any such mediation shall be binding only
upon the agreement of each party to be bound. The costs
of any mediation proceeding shall be shared equally by
the participating parties.

(Id.) The signature page of the first engagement letter reads:

"This letter correctly sets forth our understanding of Harris &

Harris, dba Last Minute Cuts School of Barbering and Cosmetology.

Acknowledged and agreed on behalf of Harris & Harris, Inc. dba

Last Minute Cuts School of Barbering and Cosmetology[.]" (Id. at

PageID 171.) The letter bears Quannah Harris's signature. (Id.)

Her title is listed as "President." (Id.) The first letter is dated

May 4, 2020. (Id.) The engagement letter for the second audit

contains an identical forum selection clause. (ECF No. 11-1 at

PageID 197.) It is also signed by Quannah Harris as president of

Harris & Harris. (Id. at PageID 198.)

On December 5, 2022, Harris filed an amended complaint. (ECF

No. 12.) In her new complaint, she named Eileen Keller and Aaron

Lohman as additional defendants. (Id.) According to the complaint,

Keller is a partner at SST, while Lohman is an employee of the

- 4 -

firm and the individual who completed the audits at issue. (Id.) Her claims now include breach of contract, accounting malpractice, negligent infliction of emotional distress, negligence, breach of fiduciary duty, negligent misrepresentation, and intentional misrepresentation. (Id.)

The defendants filed several new motions in response to Harris's amended complaint. As with the previous complaint, they assert that the court lacks personal jurisdiction (ECF No. 17) and that the case should be transferred or dismissed due to improper venue. (ECF No. 20.) They also filed a motion to dismiss for failure to state a claim. (ECF No. 19.) In addition to their previous arguments, they contend that Lohman and Keller may not be held individually liable for actions taken on behalf of SST. (Id.) The defendants also filed a motion to quash service of process. (ECF No. 18.) In that motion, they assert that Lohman and Keller were improperly served because the individual who was served with the summons and complaint is not authorized to accept service of process on their behalf. (Id. at PageID 380.)

Harris filed two responses to the defendants' motions, as well as two motions to strike. In her response in opposition to the motion to dismiss for failure to state a claim, she argues that she has standing because she is the sole owner of Harris & Harris, an unincorporated sole proprietorship, and because she was the intended beneficiary of the contract. (ECF No. 15.) She also

submits that she has adequately pled her causes of action. (Id.) In her response to the defendants' motion to transfer, she argues that the forum selection clause in the contracts between the parties were nullified when the defendants breached their agreement. (ECF No. 16 at PageID 304.) She further states that enforcement of the clause would be unjust and that the forum would be "seriously inconvenient" for her. (Id. at ECF No. 307-09.)

Although styled as motions to strike, Harris's two other motions appear to be responses to the defendants' other motions. In her motion to strike the defendants' motion to dismiss for lack of personal jurisdiction, she argues that jurisdiction over the defendants is proper pursuant to the Tennessee long-arm statute. (ECF No. 21.) Her motion to strike the defendants' motion to quash service asserts that she still has time to effect proper service, and that because Keller responded to the amended complaint in an unsworn declaration attached to the defendants' motion to dismiss, she should be considered properly served. (ECF No. 22.) The defendants responded to both of Harris's motions to strike. In response to her motion to strike relating to personal jurisdiction, the defendants again argue that because their company has "no contacts with the State of Tennessee," this court does not have personal jurisdiction over them. (ECF No. 24 at PageID 517.) In their response to her motion to strike regarding service of process, they argue that while Harris has served Lohman and Keller,

service was improper and should therefore be quashed.[2] (ECF No. 25.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Personal Jurisdiction

The court must first address the defendants' argument that this court lacks personal jurisdiction over them. "Personal jurisdiction is '[a]n essential element of the jurisdiction of a district . . . court' and without personal jurisdiction the court is 'powerless to proceed to an adjudication.'" Mgmt. Registry, Inc. v. Cloud Consulting Partners, Inc., No. 3:19-CV-00340-JHM, 2019 WL 4478860, at *3 (W.D. Ky. Sept. 18, 2019) (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)). In order to defeat a motion to dismiss under Rule 12(b)(2), the plaintiff must make a *prima facie* case that the court has personal jurisdiction. Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir. 2012). The court must consider the pleadings in the light most favorable to the plaintiff, but also must consider any undisputed factual assertions by the defendant. Id.

To determine whether personal jurisdiction over an out-of-state defendant exists, a federal court must undertake two

---

[2]As discussed above, although these motions are styled as motions to strike, in substance they serve as responses to the defendants' motions. The undersigned has considered them as such in this report and recommendation. However, to the extent that Harris's motions actually seek to strike the defendants' motions, the undersigned has entered a separate order denying those motions.

inquiries: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006). Jurisdiction must comply with both the state long-arm statute and federal constitutional law in order to be properly exercised. Id. In Tennessee, nonresidents are subject to the jurisdiction of the courts of the state "as to any action or claim for relief arising from: (1) The transaction of any business within this state; (2) Any tortious act or omission within the state; . . . (6) Any basis not inconsistent with the constitution of this state or of the United States[.]" Tenn. Code Ann. § 20-2-214. "Tennessee's long-arm statute has been interpreted to be coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" Smith v. Home Depot USA, Inc., 294 F. App'x 186, 189 (6th Cir. 2008) (quoting Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005)) (internal quotations omitted). The analysis for the two requirements is therefore the same. Id.

The federal constitutional requirement of due process is satisfied when the plaintiff shows that the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." S. Concrete Prod., Inc. v. Liberty Holdings,
L.P., No. 1:19-cv-01105-STA-jay, 2021 WL 5099601, at *2 (W.D. Tenn.
Nov. 2, 2021) (quoting Int'l Shoe Co. v. State of Wash., Off. of
Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)). The
minimum contacts test permits two types of jurisdiction: general
or "all-purpose" jurisdiction and specific or "case-linked"
jurisdiction. Id. In the present case, no party has argued that
the defendants are subject to the general jurisdiction of the state
of Tennessee, and no such inference arises from the facts alleged
by either party. For this reason, the undersigned will only
consider whether the defendants are subject to the specific
jurisdiction of this court. In the Sixth Circuit, courts follow a
three-pronged test to determine whether a defendant has sufficient
minimum contacts with a state to allow for specific jurisdiction:

> First, the defendant must purposefully avail himself of
> the privilege of acting in the forum state or causing a
> consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there.
> Finally, the acts of the defendant or consequences
> caused by the defendant must have a substantial enough
> connection with the forum state to make the exercise of
> jurisdiction over the defendant reasonable.

Beydoun v. Wataniya Restaurants Holding, Q.S.C., 768 F.3d 499, 505
(6th Cir. 2014) (quoting S. Mach. Co. v. Mohasco Indus., Inc., 401
F.2d 374, 381 (6th Cir. 1968)).

In order to find that the defendants "purposefully availed"
themselves of the privilege of acting in the state of Tennessee,

the court must find that their contacts with the state proximately resulted from actions by the defendants that created a "substantial connection" within the state. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 889 (6th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The defendants' conduct within the forum must be such that they "should reasonably anticipate being haled into court there." Id. The requirement is not satisfied by "random," "fortuitous," or "attenuated" contacts, or by the "unilateral activity of another party or a third person." Id. The existence of a contract alone is not sufficient to confer personal jurisdiction, but "the presence of certain factors in addition to the contract will be found to constitute purposeful availment." Air Prod. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 551 (6th Cir. 2007) (citing Burger King, 471 U.S. at 478-79). These may include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. Importantly, physical presence in a state is not required. Willis v. RhinoAg, Inc., No. 19-cv-01276-STA-jay, 2020 WL 2529842, at *5 (W.D. Tenn. May 18, 2020) (citing Burger King, 471 U.S. at 476). Communications such as phone calls or facsimiles, standing alone, may constitute purposeful availment where such communications are "at the heart of the lawsuit" and not "merely incidental communications." Quik Find Plus, Inc. v. Procon, Inc., No. 3:09-CV-184, 2010 WL 2158808,

at *11 (E.D. Tenn. May 25, 2010) (quoting Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001)).

In the Sixth Circuit, courts have found that financial professionals providing remote services to a forum state have purposefully availed themselves of that state when their interactions with individuals in that state are the basis of the plaintiff's claims. See Wallace v. Frank, 662 F. Supp. 876, 879 (E.D. Mich. 1987) (observing that the Michigan long-arm statute has been interpreted as being consistent with the federal constitutional requirements of due process and holding that an accounting firm that mailed allegedly fraudulent financial statements to plaintiffs in Michigan was subject to personal jurisdiction there); Richardson v. Baylor & Backus, CPAs, No. 2:18-CV-00200-DCLC, 2020 WL 6993830, at *5 (E.D. Tenn. Mar. 9, 2020) (finding that a bookkeeping service was subject to personal jurisdiction in Tennessee because it had exchanged email correspondence with a Tennessee accounting firm in "perpetration of a fraudulent accounting scheme" that harmed plaintiffs). Conversely, where the plaintiff is harmed only due to the unilateral actions of a third party in the forum state, personal jurisdiction does not exist. See Comerica Bank v. FGMK, LLC, No. 09-14520, 2010 WL 457115, at *4 (E.D. Mich. Feb. 3, 2010) (ruling that the defendant was not subject to personal jurisdiction where a third party provided their audits to the plaintiff in Michigan).

This approach has been followed in other circuits. Compare Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A., 128 F. Supp. 2d 86, 93 (D. Conn. 2001) (finding purposeful availment) and Baker & Kerr, Inc. v. Brennan, 26 F. Supp. 2d 767, 770 (D. Md. 1998) (same) with Able Fund v. KPMG Accts. NV, 247 F. App'x 504, 507 (5th Cir. 2007) (finding no purposeful availment); Burman v. Phoenix Worldwide Indus., Inc., 437 F. Supp. 2d 142, 153 (D.D.C. 2006) (same); and Young v. Jones, 816 F. Supp. 1070, 1075 (D.S.C. 1992), aff'd sub nom. Young v. F.D.I.C., 103 F.3d 1180 (4th Cir. 1997) (same).

Although the undersigned acknowledges that the defendants have relatively little connection with the state of Tennessee, the facts contained in the complaint and the defendants' motion, viewed in the light most favorable to Harris, create a *prima facie* case that the defendants purposefully availed themselves of the privilege of conducting business in Tennessee. The defendants state, and Harris does not dispute, that Harris contacted the defendants after receiving a referral from another accounting firm. (ECF No. 17 at PageID 313.) Lohman then contacted Harris and interviewed her over the phone. (ECF No. 12.) Twice, the parties agreed that SST would perform an audit of Harris's school. (ECF No. 16 at PageID 313.) They entered into two separate contracts. (ECF No. 17-1 at PageID 320, 346.) The defendants performed two audits for Harris. (Id. at PageID 313.) Throughout the course of these audits, the defendants communicated with Harris via emails

and phone calls. (ECF No. 12.) The conduct that the defendants directed toward the state of Tennessee — their representations to Harris and the audits themselves — are the basis of her claims. Harris's allegations do not arise from the defendants' random or fortuitous contact with the state. No third party involvement led Harris to suffer the harms she alleges, such as malpractice or breach of contract. These injuries, if they occurred, proximately resulted from actions by the defendants to create a substantial connection to the state of Tennessee. Neogen Corp., 282 F.3d at 889. Based on their numerous, direct contacts with Harris, the defendants certainly should have reasonably anticipated being "haled into court" in Tennessee. Id. The undersigned therefore finds that the defendants purposefully availed themselves of the privilege of doing business in the forum state.

Turning to the second element, the undersigned also finds that Harris has made a *prima facie* case that her causes of action arise from the defendants' activities in Tennessee. In order to make such a showing, the plaintiff must demonstrate that there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Richardson, 2020 WL 6993830, at *3 (quoting Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1781 (2017)) (internal quotations omitted). The defendants' activities "arise from" their contacts

- 13 -

with Tennessee if their actions are "'related to' or 'connected with' the defendant's contacts with the forum state." Id. (quoting Youn v. Track, Inc., 324 F.3d 409, 419 (6th Cir. 2003)). Harris's allegations all directly relate to the defendants' contacts with Tennessee: the contracts the parties signed and the audits the defendants performed. She claims that the defendants breached their contract, committed accounting malpractice, engaged in negligence, negligently inflicted emotional distress by failing to adhere to the terms of their contract, breached their fiduciary duties, and made negligent and intentional misrepresentations. (ECF No. 12.) All these allegations are connected with the defendants' contacts with Tennessee, that is, their contractual agreement and performance of that agreement with a Tennessee school. Thus, the undersigned finds that the second element is also satisfied.

When the first two elements of the minimum contacts test are satisfied, there exists an "inference of reasonableness." Air Prod. & Controls, 503 F.3d at 554 (quoting Theunissen v. Matthews, 935 F.2d 1454, 1461 (6th Cir. 1991)). Only "the unusual case" will not satisfy this element. Id. In determining whether such a case exists, courts are to consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing

the most efficient resolution of the controversy." <u>Intera Corp.</u>, 428 F.3d at 618.

The undersigned finds that these factors weigh in favor of Tennessee exercising personal jurisdiction. First, the burden on the defendants would be minimal. <u>See</u> <u>Youn</u>, 324 F.3d at 420. Second, the state of Tennessee has an interest in protecting its residents from potentially fraudulent financial services. <u>See</u> <u>Burger King</u>, 471 U.S. at 478 (observing that the forum state had a "manifest interest" in providing a forum for its residents). Third, Harris has a substantial interest in obtaining relief should her allegations prove true. Finally, while the state of Texas has an interest in ensuring its residents do not commit accounting malpractice, the undersigned does not find that this interest outweighs Tennessee's interest in protecting its own citizens. There is no indication that this is an "unusual case" where the exercise of personal jurisdiction would be inappropriate. <u>Air Prod. & Controls</u>, 503 F.3d at 554. For these reasons, the undersigned recommends that the defendants' motion to dismiss for lack of personal jurisdiction be denied.

**B. Venue**

1. <u>Motion to Dismiss</u>

The defendants argue that Harris's suit should be dismissed under Federal Rule of Civil Procedure 12(b)(3) because it was brought in the improper venue. District courts are empowered to

- 15 -

dismiss or transfer a "case laying venue in the wrong division or district[.]" 28 U.S.C. § 1406(a). When deciding a motion to dismiss for improper venue, "a plaintiff's well-pled allegations pertaining to the venue issue are taken as true, unless contradicted by a defendant's affidavits." Reilly v. Meffe, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014) (citing 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2013)). The plaintiff bears the burden of establishing that venue is proper. Schmidt v. City of Lima, No. 2:20-CV-4971, 2022 WL 874923, at *2 (S.D. Ohio Mar. 24, 2022) (citing Centerville ALF, Inc. v. Balanced Care Corp., 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002)).

"Under 28 U.S.C. § 1391(b), venue is proper in any federal district in which the defendant resides, where 'a substantial part of the events . . . giving rise to the claim occurred,' or, as a last resort, where the defendant is subject to personal jurisdiction." 679637 Ontario Ltd. v. Alpine Sign & Printer Supply, Inc., 218 F. Supp. 3d 572, 575 (E.D. Mich. 2016). As discussed in the previous section, a substantial part of the events giving rise to Harris's claims occurred in Tennessee, and the defendants are subject to personal jurisdiction here. Venue is therefore proper in this court. See Composite Techs., L.L.C. v. Inoplast Composites SA DE CV, 925 F. Supp. 2d 868, 872 (S.D. Ohio 2013). For that

- 16 -

reason, the undersigned recommends that the defendants' motion to dismiss for improper venue be denied.

    2.  <u>Motion to Transfer</u>

Alternatively, defendants argue that the case should be transferred to the United States District Court for the Northern District of Texas pursuant to a forum selection clause contained in two engagement letters signed by the parties. (ECF No. 20-1 at PageID 451, 478.) A forum selection clause does not render a different venue improper for the purposes of Rule 12(b)(3) or § 1406. <u>Avalon Techs., Inc. v. EMO-Trans, Inc.</u>, No. 14-14731, 2015 WL 1952287, at *4 (E.D. Mich. Apr. 29, 2015) (citing <u>Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. For the Western Dist. of Tex.</u>, 571 U.S. 49, 57 (2013)). Rather, the proper mechanism for enforcing a forum selection clause is 28 U.S.C. § 1404(a). <u>Id.</u> That statute provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404.

A court reviewing a motion to transfer "may consider undisputed facts outside the pleadings." <u>Price v. PBG Hourly Pension Plan</u>, 921 F. Supp. 2d 764, 772 (E.D. Mich. 2013) (quoting <u>Huang v. Napolitano</u>, 721 F. Supp. 2d 46, 47 (D.D.C. 2010) and collecting cases). This may include "affidavits, stipulations, and

other relevant documents," including an agreement that is attached as an exhibit to a motion to transfer. Smith v. Swaffer, 566 F. Supp. 3d 791, 798 (N.D. Ohio 2021). In this case, the defendants have attached two engagement letters to their motion to transfer. (ECF No. 20-1 at PageID 449, 475.) Each letter contains an identical forum selection clause. (Id. at PageID 451, 478.) These letters are both signed by Keller and Harris. (Id. at PageID 452, 479.) There is no dispute as to the authenticity of these letters. In fact, an unsigned copy of the first of the two letters is attached to Harris's amended complaint and serves as the basis of many of her claims. (ECF No. 12.) The court will therefore consider them in ruling on the defendants' motion.

When ruling on a motion to transfer based on a forum selection clause, "we first ask several contract-specific questions, including whether the forum-selection clause is applicable, mandatory, valid, and enforceable." Rosskamm v. Amazon.com, Inc., No. 1:22-CV-01445, 2022 WL 16534539, at *3 (N.D. Ohio Oct. 28, 2022) (quoting Lakeside Surfaces, Inc. v. Cambria Co., 16 F.4th 209, 216 (6th Cir. 2021)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." Southwinds Contracting, Inc. v. John J. Kirlin Special Projects, LLC, No. 5:16-CV-00139-TBR, 2016 WL 7031300, at *2 (W.D. Ky. Dec. 1, 2016) (quoting Wong v. PartyGaming, Ltd., 589 F.3d 821, 828 (6th Cir. 2009)). Upon a successful showing that the

parties have a contract containing a valid, enforceable forum selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Atl. Marine, 571 U.S. at 51.

The court will first consider the applicability of the forum selection clause to the *parties* in this case. Neither party has argued that the forum selection clause should not be enforced because it is inapplicable to the parties in this lawsuit. (ECF Nos. 16, 20.) However, the undersigned notes that in their motion to dismiss for failure to state a claim, the defendants argue that Harris lacks standing to sue because she is "a non-party to the agreement" containing the clause. (ECF No. 19-3 at PageID 423.) Both of the agreements at issue were signed by Harris as the president of Harris & Harris, Inc. (ECF No. 20-1 at PageID 452, 479.) According to the defendants, this means that "[a]ny agreement underlying Plaintiff's claims would be between SST and Harris & Harris—not Plaintiff." (Id.) Harris argues that she has standing to enforce the agreements because "Harris and Harris was unincorporated at the time of signing the agreement . . . It was a sole proprietorship and still remains unincorporated. It is 100% owned by Quannah Harris, the Plaintiff." (ECF No. 15.) This is further supported by her amended complaint, which states that "[t]he Engagement Letter presented in Eileen Keller's Unsworn

Testimony (Doc11-1, Page 6-9) is a legally binding contractual agreement between the Plaintiff and the Defendants." (ECF No. 12.)

In the Sixth Circuit, "[a] non-signatory to a contract may be bound by a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." G.C. Franchising Sys., Inc. v. Kelly, No. 1:19-CV-49, 2021 WL 1209263, at *3 (S.D. Ohio Mar. 31, 2021) (citing Baker v. LeBoeuf, Lamb, Leiby & Macrae, 105 F.3d 1102, 1106 (6th Cir. 1997)). Courts are directed to apply a "common sense approach" in light of the circumstances in order to make this determination. Reagan v. Maquet Cardiovascular U.S. Sales LLC, No. 1:14-cv-548, 2015 WL 521049, at *3 (N.D. Ohio Feb. 9, 2015). "[A] court must inquire 'whether, in light of [the] circumstances, it is fair and reasonable to bind a non-party to the forum selection clause.'" Id. (quoting Regions Bank v. Wyndham Hotel Mgmt., Inc., No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. March 12, 2010)). In this case, the undersigned finds that it would be. Harris's filings explicitly state that she considers herself bound by the agreement between Harris & Harris, Inc. and SST. (ECF No. 12.) Indeed, many of her claims arise from the parties' obligations under those agreements. (Id.) She has also not argued that the clause is inapplicable to her personally. There would be no unfairness in binding Harris to an agreement she admits she is

bound by. The undersigned therefore finds that the forum selection clause is applicable to the parties to this lawsuit.

The court next considers the applicability of the clause to the *claims* in this case. The paragraph containing the forum selection clause begins by stating that "[y]ou agree that *any* dispute (other than our efforts to collect an outstanding invoice) that may arise regarding the meaning, performance or enforcement of this engagement or any prior engagement we have performed for you will, prior to resorting to litigation, be submitted to mediation . . . " (ECF No. 20-1 at PageID 478) (emphasis added.) After describing the specifics of the mediation mandated, including that it will be administered in Dallas County, Texas, the letter goes on to state that "*any* ensuing litigation shall be conducted within said county, according to Texas law." (Id.) (emphasis added.) Harris's claims fall within the ambit of this clause. Her complaint does not relate to efforts to collect an outstanding invoice, which is specifically exempted from the clause. Instead, her claims pertain to the "meaning, performance or enforcement" of her agreement with SST. Her breach of contract claim relates to enforcement of their agreement. Her claims for accounting malpractice, negligent infliction of emotional distress, negligence, breach of fiduciary duty, negligent misrepresentation, and intentional misrepresentation all concern the defendants' performance of their contract with Harris. All

these claims fall within the scope of the forum selection clause. As such, the undersigned finds that the clause is applicable to the matter at hand.

The court also finds that the clause is mandatory. "A forum selection clause is mandatory if it clearly indicates that jurisdiction is proper only in the selected forum." Kendle v. Whig Enters., LLC, No. 2:15-cv-1295, 2016 WL 354876, at *4 (S.D. Ohio Jan. 29, 2016) (quoting Braman v. Quizno's Franchise Co., LLC, No. 5:07CV2001, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008)). The text of the clause at issue states that "any" claims shall be submitted to mediation in Dallas County, Texas, and that "any" ensuing litigation "shall be" conducted within that county. (ECF No. 20-1 at PageID 478.) Agreements relating to venue with the phrase "shall be" are construed as "clear and unambiguous mandatory forum selection clauses." CBR Funding, LLC v. Jones, No. 1:13-cv-01280-JDB-egb, 2014 WL 12626321, at *1 (W.D. Tenn. May 20, 2014) (citing Union Planters Bank, N.A. v. EMC Mortgage Corp., 67 F. Supp. 2d 915, 922 (W.D. Tenn. 1999)). The engagement letters also do not set forth any other forums as permissible venues for litigation. (Id.) The only exceptions stated in the agreements are "efforts to collect an outstanding invoice." (Id.) This is not such an effort. Therefore, as to the claims at hand, the undersigned finds that the clause is mandatory.

Finally, the court will consider whether the clause is valid and enforceable. There is a strong presumption in favor of the enforceability of forum selection clauses. Lakeside, 16 F.4th at 219. That presumption may be defeated by a showing that:

> (1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state.

Id. at 219-20 (citing Wong, 589 F.3d at 828 and Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1229-30 (6th Cir. 1995)). Harris argues that both the first and third factor prevent the enforcement of the clause at issue.

She first argues that the clause is unenforceable due to fraud. (ECF No. 16 at PageID 305.) The fraud she alleges is the defendants' failure to perform the specific type of audit she requested as well as pressure from Lohman to submit fraudulent tax returns on behalf of her school. (Id.) These allegations do not invalidate the forum selection clause because they allude to fraud in the performance of the contract, rather than fraud in the formation of the contract. Furthermore, even if Harris were alleging that she was fraudulently induced to sign the engagement letters, this would not be sufficient to invalidate the forum selection clause. "Unless there is a showing that the alleged fraud

or misrepresentation induced the party opposing the forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to an entire contract does not affect the validity of a forum selection clause within that contract." Nash & Powers Ins. Servs., Inc. v. Astonish Results, LLC, No. 2:13-CV-257, 2014 WL 12847499, at *3 (E.D. Tenn. May 16, 2014) (citing Preferred Capital, Inc. v. Assocs. in Urology, 453 F.3d 718, 722 (6th Cir. 2006)); see also Wong, 589 F.3d at 828 ("[T]he party opposing the clause must show fraud in the inclusion of the clause itself."). Harris has not claimed that SST specifically induced her to agree to the forum selection clause via fraud or misrepresentation. Her claims of fraud committed by the defendants after the engagement letters were signed do not render the forum selection clauses unenforceable.

Harris also argues that enforcement of the forum selection clause would be seriously inconvenient, unreasonable, or unjust. (ECF No. 16 at PageID 307-09.) In order to make a showing of serious inconvenience, a party must show that enforcement of the clause would effectively deprive them of "a meaningful day in court." North v. McNamara, 47 F. Supp. 3d 635, 646 (S.D. Ohio 2014) (quoting Preferred Capital, 453 F.3d at 722–23) (internal quotations omitted). Harris states that "a transfer of venue would cause an unnecessary and additional burden for Harris for trial."

(ECF No. 16 at PageID 309.) This is because her school's license has been revoked while "[a]ll Defendants are currently licensed and operating regardless of their fraudulent practices." (Id.) This showing does not satisfy Harris's burden of demonstrating that litigation in the Northern District of Texas would be so inconvenient that it would deprive her of a meaningful day in court. Harris further argues that enforcement of the clause would be unreasonable because of the expenses associated with mediation. (Id. at 308.) However, enforcement of the forum selection clause will not necessarily entail enforcement of the mediation clause. It will be up to the district court in the Northern District of Texas to determine whether or not to order the parties to mediate. In consideration of all this, the undersigned finds that the strong presumption in favor of enforceability has not been overcome.

Having determined that the forum selection clause is applicable, mandatory, valid, and enforceable, the court will now consider whether "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Atl. Marine, 571 U.S. at 51. When performing this analysis, the plaintiff's choice of forum and the private interests of the parties receive no weight. Id. Instead, the court is only to consider certain "public interest factors," which include:

> [T]he administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having

> the trial of a diversity case in a forum that is at home
> with the law that must govern the action; the avoidance
> of unnecessary problems in conflict of laws, or in the
> application of foreign law; and the unfairness of
> burdening citizens in an unrelated forum with jury duty.

Boling v. Prospect Funding Holdings, LLC, 771 F. App'x 562, 568 n.6 (6th Cir. 2019). Harris has not argued that any of these factors weigh against the enforcement of the forum selection clause, nor are any factors apparent from the parties' filings. (ECF Nos. 16, 20.) The undersigned therefore recommends that the motion to transfer be granted.[3]

### III. RECOMMENDATION

For the above reasons, the undersigned recommends that the defendants' Motion to Dismiss for Lack of Jurisdiction be denied and that their Motion to Transfer be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 1, 2023
Date

---

[3]Because the court is recommending that this case be transferred, the undersigned need not reach the defendants' motions regarding failure to state a claim (ECF No. 19) and defective service. (ECF No. 18.) These motions will be properly before the district court in the Northern District of Texas after the case is transferred.

- 26 -

NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.   ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.   28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).   FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**