IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| QUANNAH HARRIS, d/b/a LAST MINUTE CUTS, § § § | |
| Plaintiff, § § | |
| V. § | No. 3:23-cv-898-E-BN |
| § | |
| SALMON SIMS THOMAS, PLLC, ET AL., § § § § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Quannah Harris, resident in Memphis, Tennessee, filed in the Western District of Tennessee a *pro se* complaint alleging claims, including accounting malpractice, negligence, breach of fiduciary duty, negligent misrepresentation, and intentional misrepresentation, against Defendant Salmon Sims Thomas, PLLC (SST), an accounting firm in Dallas, and Defendants Eileen Keller, a partner at SST, and Aaron Lohman, an employee of the firm (collectively Defendants). *See* Dkt. No. 12 (amend. compl.).

The United States District Court for the Western District of Tennessee denied Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), but, considering a forum selection clause contained in two engagement letters signed by the parties, specifying that any litigation shall be conducted in Dallas County, Texas, the court granted Defendants' motion to transfer and directed that this lawsuit be transferred to this district under 28 U.S.C. § 1404. *See Harris v.*

*Salmon Sims Thomas, PLLC*, No. 22-02757-MSN-tmp, 2023 WL 3035348 (W.D. Tenn. Mar. 1, 2023), *rec. adopted*, 2023 WL 3108524 (W.D. Tenn. Apr. 26, 2023).

But the district court in Tennessee left pending Defendants' other motions as to Harris's amended complaint: a motion to dismiss/quash service under Federal Rule of Civil Procedure 12(b)(5), *see* Dkt. No. 18, and a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see* Dkt. No. 19; *see also Harris*, 2023 WL 3035348, at *9 n.3.

After transfer to this district, United States District Judge Ada Brown referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

And, because the parties briefed (or at least had the opportunity to brief) the pending motions prior to the lawsuit's transfer to this district, *see* Dkt. Nos. 21-25, the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss the amended complaint under Rule 12(b)(6), deny as moot the motion under Rule 12(b)(5), and grant Harris leave to file a second amended complaint.

**Legal Standards**

Starting with a motion to quash, service of process is "fundamental to any procedural imposition on a named defendant" and is therefore "the official trigger for responsive action by an individual or entity named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 353 (1999). Consequently, "[a] federal court is without personal jurisdiction over a defendant unless the defendant has been

served with process in accordance with Federal Rule of Civil Procedure 4." *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

Both Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) "challenge the sufficiency of service of the summons and complaint." *Bernard v. Grefer*, Civ. A. No. 14-887, 2015 WL 13532582, at *1 (E.D. La. Mar. 17, 2015). "Rule 12(b)(4) challenges the form of the process and the contents of the summons, specifically its noncompliance with Rule 4(b)." *Id.* (citing *Gartin v. Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (per curiam)). And Rule 12(b)(5) "permits a challenge to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint." *Naranjo*, 679 F. Supp. 2d at 795 (quoting *Neely v. Khurana*, No. 3:07-cv-1344-D, 2008 WL 938904, at *2 (N.D. Tex. Apr. 7, 2008)).

"Once the validity of service has been contested, the plaintiff bears the burden of establishing its validity." *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). And a plaintiff's *pro se* status does not excuse a failure to properly effect service of process. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, although Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

And, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and

naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)).

And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff' and would '"transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest

arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per

curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. For example, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a

motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Analysis

Taking the Rule 12(b)(6) motion first, Harris's claims, at their core, are based on an agreement between SST and an entity identified as Harris & Harris, Inc. dba Last Minute Cuts School of Barbering & Cosmetology (the Company), *see* Dkt. No. 12 at 31-34 (attached exhibit) – that SST allegedly breached the agreement by conducting a GAGAS audit, instead of a GAAP audit, *see id.*, ¶¶ 21, 24, 38, 43, 48, 55, 60, 64, 69.

And Defendants argue that Harris herself, "as a non-party to the alleged agreement," "lacks standing to assert any of the claims advanced in the Amended Complaint." Dkt. No. 19-3 at 9-10; *see also Harris*, 2023 WL 3035348, at *6-*9 (noting that, although Defendants dispute whether Harris herself is a party to the agreement, finding that the forum selection clause of the agreement could be enforced against Harris for the sole purpose of resolving the motion to transfer venue and further finding that the claims in the amended complaint "pertain to the 'meaning, performance or enforcement' of [the] agreement with SST"; that the "breach of contract claim relates to enforcement of [the] agreement"; that the "claims for accounting malpractice, negligent infliction of emotional distress, negligence, breach of fiduciary duty, negligent misrepresentation, and intentional misrepresentation all concern the … performance of [the] contract"; and that "[a]ll these claims fall within the scope of the forum selection clause").

The operative complaint identifies Harris as "minority school owner" but fails to plausibly allege how she herself should be considered a party to the agreement or a third-party beneficiary under the agreement between SST and the Company.

And the undersigned acknowledges that, in response to the motion to dismiss the original complaint (where Harris did not file a response to the motion to dismiss the amended complaint), Harris states that "Harris and Harris was unincorporated at the time of signing the agreement"; that "[i]t was a sole proprietorship and still remains unincorporated"; and that "[i]t is 100% owned by Quannah Harris, the Plaintiff." Dkt. No. 15 at 9. But, as the undersigned explained above, Harris may not amend her allegations through a response to a motion to dismiss, which itself is not a pleading.

Focusing on whether Harris has alleged that she is a third-party beneficiary under the agreement, the law in Texas provides that, "[t]o determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, courts must look solely to the contract's language, construed as a whole." *First Bank v. Brumitt*, 519 S.W.3d 95, 102-03 (Tex. 2017) (citing *Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 53 (Tex. 1964); *Citizens Nat'l Bank in Abilene v. Tex. & Pac. Ry. Co.*, 150 S.W.2d 1003, 1006 (1941)).

The contract must therefore "include 'a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to create a third-party beneficiary is insufficient." *Id.* at 103 (quoting *Tawes v. Barnes*,

340 S.W.3d 419, 425 (Tex. 2011); citations omitted). And so

> [c]ourts may not presume the necessary intent. To the contrary, [courts] must begin with the presumption that the parties contracted solely for themselves, and only a clear expression of the intent to create a third-party beneficiary can overcome that presumption. If the contract's language leaves any doubt about the parties' intent, those doubts must be resolved against conferring third-party beneficiary status. Although a contract may expressly provide that the parties do not intend to create a third-party beneficiary, the absence of such language is not determinative. Instead, the controlling factor is the absence of any sufficiently clear and unequivocal language demonstrating the necessary intent.

*Id.* at 103 (cleaned up).

These standards apply to an agreement with an accounting firm, considering that "[t]he accountant-client relationship is a contractual relationship that creates privity between the accountant and the client, permitting only the client to bring a claim for professional negligence against the accountant." *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 182 (Tex. App. – San Antonio 2007, no pet.); *but see also Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010) (recognizing that the tort of negligent misrepresentation may be alleged not just by a client but by a "known party," "one who falls in a limited class of potential claimants, for whose benefit and guidance one intends to supply the information or knows that the recipient intends to supply it," and that "[t]his formulation limits liability to situations in which the professional who provides the information is aware of the nonclient and intends that the nonclient rely on the information" (cleaned up)).

Applying these standards to Harris's amended allegations, the Court should grant the motion to dismiss under Rule 12(b)(6) but allow Harris an opportunity to

file a second amended complaint to correct the deficiencies identified above, and the Court should deny the Rule 12(b)(5) motion concerning service of the amended complaint as moot.

Should Harris elect to file a second amended complaint, the undersigned notes that the district court in Tennessee observed that the agreement from which these claims stem provides that, "prior to resorting to litigation," disputes should "be submitted to mediation" but that "[i]t will be up to the district court in the Northern District of Texas to determine whether or not to order the parties to mediate." *Harris*, 2023 WL 3035348, at *8-*9 (cleaned up).

The undersigned also notes that, should Harris elect to file a second amended complaint, she should be cognizant of the applicable statutes of limitations. For example, if Texas's applicable statute of limitations applies and if Harris intends to reassert claims against Keller and Lohman, Harris must explain how her amendment relates back to the filing of the original complaint. *See* FED. R. CIV. P. 15(c)(1); *see, e.g.*, *Balle v. Nueces Cnty., Tex.*, 952 F.3d 522, 556-58 (5th Cir. 2017); *Allen v. Hays*, 65 F.4th 736, 750-51 (5th Cir. 2023); *see also Hernandez v. Smith*, 793 F. App'x 261 (5th Cir. 2019) (per curiam).

The undersigned finally notes that the agreement from which the claims stem does provide that "ensuing litigation shall be conducted within [Dallas County], according to Texas law" and the briefing relies at least in part on Texas law but fails to include a formal choice-of-law analysis. Should further briefing be necessary, the parties should explain why a particular state's law applies.

## Recommendation

The Court should grant the motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 18], deny as moot the motion under Federal Rule of Civil Procedure 12(b)(5) [Dkt. No. 19], and grant Plaintiff Quannah Harris leave to file a second amended complaint by a reasonable deadline to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 20, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE